FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 APR 24 AM 9:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LOYED MAX HAMMONDS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.: 03-PT-137-M<br>) |
| BAYER, A.G.; BAYER CORPORATION, et al., | )<br>)<br>) |
| Defendants. | ) |

ENTERED
APR 24 2003

**MEMORANDUM OPINION**

This cause comes on to be heard upon plaintiff Loyed Max Hammonds' ("Hammonds") Motion to Remand (Doc. 6) and Motion to Reconsider the Court's Order of January 29, 2003 (Doc. 7). Both motions were filed on February 12, 2003.

**FACTS AND PROCEDURAL HISTORY[1]**

Hammonds is a citizen of Etowah County, Alabama. Defendant Bayer A.G. is foreign corporation with its headquarters in Leverkusen, Germany. Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania. Bayer Corporation is a wholly owned subsidiary of Bayer A.G. (collectively "Bayer"). Defendant GlaxoSmithKline PLC is a British corporation with its principal place of business in the United States in Philadelphia, Pennsylvania. GlaxoSmithKline PLC is the holding company of SmithKline Beecham d/b/a GlaxoSmithKline, a Pennsylvania corporation (collectively "GSK"). At all times relevant to this lawsuit, GSK and Bayer sold, promoted, and distributed the drug Baycol in Etowah County, Alabama.

---

[1] For purposes of these motions only, the facts as stated in the complaint will be taken as true.



Baycol belongs to a class of drugs called "statins" that are believed to lower HDL cholesterol and triglycerides, and that are commonly prescribed for high blood pressure and heart disease. Baycol is more potent than other statins, in that it takes effect at much lower doses than other statins. In June 1997, defendants[2] received approval from the Food and Drug Administration ("FDA") to market Baycol in the United States at doses of 0.2 and 0.3 milligrams. However, in 1998, defendants became aware that Baycol was fatally linked to rhabdomyolsis, a serious condition in which skeletal muscle tissue suffers acute damage. This damage in some cases has led to kidney or heart failure, which can lead to death. Since then, fifty-three (53) additional deaths in this country have been associated with Baycol, as well as over 1,000 cases of muscle weakness or damage. Nevertheless, defendants failed to raise these concerns with the FDA before January of 1999.

Despite these and other problems, defendants persisted in seeking approval for higher doses of Baycol. In May 1999, four months after defendants were required to change Baycol's label to include some of the reported symptoms, the FDA approved a 0.4 milligram dosage. Tests performed in connection with the approval process signaled significant problems associated with a 0.4 milligram dosage, and an even higher rate of adverse events associated with a 0.8 milligram dosage. Nevertheless, defendants sought, and were given, approval to market a 0.8 milligram dosage in July 2000. During this period, defendants continued to receive reports from doctors and the FDA concerning adverse events. In April 2001, the FDA again required stronger labels, emphasizing particularly the risks of prescribing gemfibrozil in conjunction with Baycol.

---

[2]As will be discussed below, Bayer and GSK allege that James Wallace, M.D., was fraudulently joined as a defendant in this action. Therefore, all references to "defendants" will be to Bayer and GSK only.

On May 21, 2001, defendants sent a letter to doctors which did call some attention to the problems associated with Baycol, especially when prescribed with gemfibrozil. Nevertheless, the letter stated that Baycol was safe when used as directed. Hammonds also alleges that the defendants continued to conceal the adverse effects of Baycol after sending this ineffective warning. Specifically, defendants marketed Baycol in 0.4 and 0.8 milligram doses as safe and highly effective. In these advertisements, the risks of taking Baycol were embedded in lengthy fine print statements. On August 8, 2001, defendants finally pulled Baycol off the market.

On or around August 2000 until August 2001, James Wallace, M.D. ("Wallace"), undertook to and did provide medical services to Hammonds, including prescribing Baycol to Hammonds. All of these services were performed in Etowah County, Alabama. Wallace failed to inform Hammonds of the dangerous risks associated with taking Baycol. Wallace also failed to inform Hammonds about safer, more effective medicines and treatment for the management of his medical conditions. Finally, Wallace failed to monitor Hammonds' medical conditions and failed to detect that Hammonds' health was deteriorating. As a result of taking Baycol, Hammonds has suffered, among other things, severe muscle pains, muscle spasms, muscle weakness, nausea, and kidney problems.

Hammonds filed this lawsuit in the Circuit Court of Etowah County, Alabama on December 20, 2002. Some counts are alleged against Bayer and GSK, some against Wallace. Defendants removed this case to this court on January 21, 2003. On January 24, 2003, defendants filed a Motion to Stay (Doc. 4) these proceedings pending a transfer to the Multi-District Litigation ("MDL") Court in Minnesota.[3] This court granted that motion on January 29,

---

[3] On December 18, 2001, the Judicial Panel on Multidistrict Litigation issued an order establishing a MDL court in the District of Minnesota to coordinate Baycol-related lawsuits.

2003. Hammonds has now filed a motion asking this court to reconsider that order, and a separate motion asking the court to remand the case to the Circuit Court of Etowah County, Alabama.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple

defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS

### I. Motion to Reconsider

#### A. Plaintiff's Position

Hammonds argues that this court, before staying the case, must first decide his motion to remand. In essence, Hammonds contends that an order to stay this case pending a transfer to the MDL is improper if this court does not have subject matter jurisdiction over the case. Hammonds cites an order from the case *Baldwin v. Prudential Ins. Co.*, No. 96-1264-CB-M (S.D. Ala. Mar. 19, 1997), in which the court stated that

> Congress has provided that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This court has determined that it lacks subject matter jurisdiction to hear this case, and pursuant to Congress's mandate, this court is remanding the case. To stay these proceedings when the court clearly lacks subject matter jurisdiction is contrary to Congress's intent. Furthermore, it perpetuates federal interference in a case properly brought to state court and runs afoul of the tradition of limited federal jurisdiction.

*See* Pl. Ex. B at 10. Hammonds has also attached opinions and orders from other cases in which a remand to state court was granted despite the existence of an MDL court. *See* Pl. Exs. D-H. Also, Hammonds argues, even if the case could be transferred to the MDL court for that court to determine the jurisdictional issues, he should not be required to spend the additional time and expense litigating in a forum hundreds of miles from Alabama.

#### B. Defendants' Response

Defendants argue that this court should keep the stay in effect and transfer the case to the MDL court for it to resolve the remand issues. This approach, defendants argue, would allow

5

the MDL court to function, as Congress intended, as the central decision-maker for this and other legal and factual issues that have arisen from the more than 4,000 Baycol cases that are already in the MDL. *See* 28 U.S.C. § 1407(a). Indeed, defendants contend that the MDL has had cases transferred to it notwithstanding pending motions to remand. *See* Def. Exs. B-C. Moreover, "by sending the remand issues to the MDL court, the Plaintiff[ is] much more likely to be treated uniformly with other similarly situated Plaintiffs." *Fountain v. Johnson & Johnson Co.*, No. 01-0380-CV-W-4, at 5 (W.D. Mo. June 22, 2001) (Def. Ex. E). *See also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). More specifically, defendants cite several Baycol cases from the federal courts in Alabama in which stays were entered, despite pending motions to remand. *See* Def. Br. at 5.

### C. Plaintiff's Reply

Hammonds again cites the district court's opinion in *Baldwin* and other cases, as well as 28 U.S.C. § 1447(c), which provides that if "any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Here, Hammonds argues, the case should not be transferred to the MDL court because this court does not have subject matter jurisdiction over the case.

## II. Motion to Remand

### A. Plaintiff's Position

First, Hammonds argues, the case should be remanded because defendants have failed to follow the procedural requirements for removal found in 28 U.S.C. § 1446. Hammonds notes that failure to comply with the requirements of the removal statute constitutes grounds for remand. *See Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342 (M.D. Ala. 2000). Moreover, when a plaintiff questions the propriety of a defendant's removal petition, the

6

defendant bears the burden of showing that removal was proper. *See Webster v. Dow*, 925 F. Supp. 727 (M.D. Ala. 1996).

Here, Hammonds argues, defendants have failed to comply with § 1446 because Wallace did not join with the defendants in their notice of removal. Hammonds argues that the law is clear that all served defendants must join in the removal petition, and the failure for all necessary and indispensable defendants to join in the removal petition constitutes a defect in the petition. *See, e.g., Raisanen v. Lolley*, 2001 WL 102362 (S.D. Ala. Jan. 18, 2001); *Newman*, 109 F. Supp. 2d 1342; *Miles v. Kilgore*, 928 F. Supp. 1071 (N.D. Ala. 1996). Hammonds argues that Wallace is a necessary and indispensable in this case, and thus the removal petition is invalid. *See Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970) (stating that the test for whether a defendant is an indispensable party is whether in the absence of the defendant, the court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff). Wallace was the doctor who treated Hammonds and prescribed the Baycol, and Hammonds has specifically alleged a cause of action against him under the Alabama Medical Liability Act ("AMLA"). If Wallace had not prescribed the Baycol, Hammonds would not have a cause of action against any of the defendants. Thus, Hammonds contends, Wallace is indispensable and therefore must join in the removal petition.

Second, Hammonds contends, Wallace is a citizen of Alabama, and thus there is no diversity jurisdiction in this case. Hammonds argues that he has set out allegations in the complaint that would support a claim against Wallace under the AMLA. Hammonds notes that defendants have raised the issue of fraudulent joinder. However, Hammonds argues, to support a

7

charge of fraudulent joinder a defendant must show that there is "no possibility that the Plaintiff can establish a cause of action against the resident Defendant," a burden which had been described as "heavy." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). According to Hammonds, the question is not whether he *will* recover against Wallace; rather, it is whether there is a *possibility* that he has a claim against Wallace. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1989) ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (same).[4]

### B. Defendants' Response

Defendants argue that the citizenship of Wallace should be disregarded because "there is no possibility that the plaintiff can ever prove a cause of action against him." *Triggs*, 154 F.3d at 1287. Here, Hammonds has alleged, among other things, that the defendants misrepresented and/or concealed material facts about the dangers of Baycol from prescribing physicians, and provided insufficient warning labels about the dangers of Baycol. Defendants contend that Hammonds cannot then argue that Wallace should have known the problems associated with Baycol or should have prescribed a safer treatment. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) ("Plaintiffs do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of Rezulin. In fact, the assertion that '[d]efendants ... recklessly, falsely and/or deceptively represented or

---

[4] Hammonds also alleges that defendants have failed to satisfy the amount in controversy requirement. Defendants assert that it is apparent from the face of the complaint that the requirement is met. *See* Def. Br. at 6-9. Hammonds counters that defendants' conclusory statements regarding the amount in controversy are insufficient. *See* Pl. Reply Br. at 11-12.

8

knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Rezulin from prescribing physicians' refutes the assumption that Oblena, as a physician, had knowledge of Rezulin's harmful effects."). *See also* Notice of Removal at ¶ 14.

Thus, assuming that the allegations against defendants are true, there is no possibility that Hammonds can recover against Wallace. In other words, where "the major theme of [the complaint] is the [] intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information . . .," these allegations "belie[] any suggestion of knowledge, or reason to know by the[] resident defendants." Notice of Removal, Ex. B at 5. *See also* Notice of Removal at 3-8. Defendants also argue that the other requirements for removal have been met. Defendants note that a "party fraudulently joined to defeat removal need not join in [the] removal petition." *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983).

C. Plaintiff's Reply

Hammonds again notes that the burden of proving fraudulent joinder is on the defendants, and that the burden is a heavy one. *Cabalceta*, 883 F.2d at 1561. Also, Hammonds again argues that he need only show that there is a possibility that he has a valid claim against Wallace. *See Triggs*, 154 F.3d at 1287. *See also Pacheco De Perez*, 139 F.3d at 1380-81 (noting that courts are not to weigh the merits of a plaintiff's claim). Hammonds concedes that part of his claim against Wallace is based on an argument that Wallace failed to warn Hammonds about Baycol or to offer a safer alternative. However, Hammonds notes, he has also alleged that Wallace failed to monitor his condition after he began taking Baycol, and that Wallace failed to detect that his health was failing rapidly. *See* Compl. at ¶¶ 50-51.

9

Hammonds also contends that defendants' argument, that a plaintiff cannot allege concealment against a pharmaceutical company and at the same time allege failure to warn against the prescribing doctor, has been rejected by a number of courts. *See* Pl. Reply Br. at 9-11. One of the cases cited by Hammonds relied upon Federal Rule of Civil Procedure 8(e), which provides:

> (e) Pleading to be Concise and Direct; Consistency.
>
> (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.
>
> (2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

*See Lauderdale v. Merck, Co.*, 2002 WL 449423 at *3 (N.D. Miss. Feb. 4, 2002) ("Defendants assert that the Plaintiff cannot plead both that the drug company Defendants withheld information . . . [and that] Dr. Johnson knew or should have known of the dangerous side effects of the drugs. It is axiomatic and long-established, however, that '[a] party may . . . state as many separate claims or defenses as the party has regardless of consistency . . .'").

## CONCLUSIONS OF THE COURT

With regard to the question of whether a claim is stated against Dr. Wallace based upon knowing or should know the dangers of Baycol, the court agrees with the defendants that, generally, such an issue should initially be considered by the MDL, even as related to removal and remand considerations. However, the plaintiff also alleges that Dr. Wallace failed to

monitor his health conditions which could or could not have been related to the use of Baycol. A physician may well have a duty to monitor a patient's reaction to any drug, approved or not, and react to deteriorating health conditions. The court cannot conclude that there is no possibility that such a claim can be maintained against Dr. Wallace. The motion will be granted.

This ___ day of April, 2003.

_____
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

11